IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10846
_____


DESMOND DOMINQUE JENNINGS,

                    Petitioner-Appellant,

v.


GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:98-CV-238)
_____

January 21, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

    Desmond Jennings, a Texas death row inmate, seeks a
certificate of appealability to review the district court's
denial of his petition for a writ of habeas corpus.  For the
reasons that follow, we deny Jennings's application to appeal.

I.  FACTS AND PROCEDURAL HISTORY

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Sometime after midnight on December 27, 1993, Eric Gardner was standing outside the Ambassador Apartments in the "Stop Six" area of Fort Worth, Texas. Gardner, needing a ride home, flagged down Jennings and John Freeman as they were driving along in Freeman's white Honda Accord. Freeman and Jennings agreed to drive Gardner home. After Gardner got into the car, Freeman stated that he would take Gardner home, but that he first wanted to get some heroin. On their way to a drug house, Jennings suggested that they "jack the house." Freeman responded, "Well, whatever. Whatever you want to do." Gardner urged them not to rob the drug house, but Jennings responded, "Well, ain't nothing but two dope fiends in the house."

Upon arriving at the drug house, Jennings and Freeman exited the car and went into the house. As they approached the house, Jennings pulled the hood of his jacket over his head and he placed both hands inside the jacket pockets. Freeman's hands were free, and he did not appear to have a gun. Gardner stayed in the car and heard shots. He then saw Jennings and Freeman emerge from the house and walk calmly back to the car.

As the three men drove away from the crime scene, Jennings pulled a pouch out of his pocket and opened it. The pouch contained thirteen cents and two empty capsules sometimes used to store heroin. Freeman then drove to the Americana Apartments, and he parked the Honda in front of the apartment of a mutual friend, Derrick Price. Price and another person, Victor Walker, joined the group. Jennings got out of the car and then began to

2

brag about the day's events.  He recounted that when he entered the drug house, a man, Sylvester Walton, stood up and asked Jennings what he wanted.  Jennings shot Walton in the face. Jennings then went to the back room where a woman, Wonda Mathews, was in bed.  When she began to rise out of the bed, Jennings shot her in the head.  He then went back to the front room, shot Walton again, and removed a pouch from Walton's pants.  Before leaving the house, Jennings heard Mathews moaning, so he returned to the back room and shot her again.  After describing the killings, Jennings noted, "I got blood all over my Chucks and my khakis."  Gardner saw blood on Jennings's "Chuck Taylor" Converse All Star tennis shoes.

On July 19, 1995, Jennings was convicted of capital murder in connection with the deaths of Sylvester Walton and Wonda Mathews.  The trial court sentenced Jennings to death in accordance with state law after the jury returned affirmative answers to the three special issues presented to it pursuant to Tex. Crim. P. Code Ann. § 37.071 (West 1998).

Jennings's appellate counsel raised eleven grounds of error on direct appeal.  Jennings's state habeas counsel then moved for leave to intervene in the direct appeal and file a supplemental brief raising an additional ground of error relating to the exclusion of a venireperson for cause.  The Texas Court of Criminal Appeals denied the motion.  Jennings's habeas counsel then filed an application for a state writ of habeas corpus during the pendency of the direct appeal.

On April 2, 1997, the Texas Court of Criminal Appeals affirmed the trial court's judgment on direct appeal. On May 8, 1997, the trial court entered findings of fact and conclusions of law, recommending that state habeas relief be denied. The Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law and denied the application. The Supreme Court denied Jennings a writ of certiorari on December 8, 1997. See Jennings v. Texas, 118 S. Ct. 605 (1997).

On April 24, 1998, Jennings filed this petition for a federal writ of habeas corpus. The federal district court denied Jennings's habeas petition and denied Jennings a certificate of appealability (COA) to appeal the denial of the habeas petition to this court. Jennings timely requested a COA from this court.

## II. DISCUSSION

Jennings filed his habeas petition in the federal district court in April 1998; therefore, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to his case. See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Under AEDPA, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability (COA) can only issue if a habeas petitioner makes a "substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). "A 'substantial showing' requires the

4

applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court <u>could</u> resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" <u>Drinkard v. Johnson</u>, 97 F.3d 751, 755 (5th Cir. 1996) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)), <u>cert. denied</u>, 117 S. Ct. 1114 (1997).

Jennings advances seven issues in his COA application, alleging that 1) the trial court violated the Confrontation Clause of the Sixth Amendment by limiting his cross-examination of Gardner, the state's primary witness; 2) the trial court violated Jennings's rights under the Fifth, Sixth, and Fourteenth Amendments when it determined that a prospective juror, Peggy Robinson Miesner, was excludable for cause; 3) Jennings's appellate counsel rendered unconstitutionally ineffective assistance by failing to raise the juror exclusion issue on direct appeal; 4) the Texas Court of Criminal Appeals violated Jennings's rights under the Fifth, Sixth, and Fourteenth Amendments by refusing to allow his state habeas counsel to intervene in the direct appeal and file a supplemental brief; 5) Texas's capital sentencing procedures are unconstitutional as applied to Jennings because they did not provide him with meaningful appellate review as required by the Eighth and Fourteenth Amendments; 6) the federal district court erred in accepting the State's waiver of the exhaustion of state court remedies requirement with respect to the meaningful appellate review issue; and 7) the federal district court erred in denying

Jennings an evidentiary hearing.[1]

Jennings raised several of these claims in his direct appeal and his state habeas petition. Under AEDPA, when a petitioner brings a claim in his federal habeas petitioner that a state court has previously adjudicated on the merits, we must defer to the state court's findings of fact and conclusions of law. See Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998); Drinkard, 97 F.3d at 768. Under the AEDPA deference scheme, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). See Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir. 1998); Drinkard, 97 F.3d at 767-68. When reviewing a purely legal question, we must defer to the state court unless its decision rested on a legal determination that was contrary to clearly established federal law as determined by the Supreme Court. See Lockhart v. Johnson, 104 F.3d 54, 57 (5th Cir.), cert. denied, 117 S. Ct. 2518 (1997); Drinkard, 97 F.3d at 768. Additionally, a federal court "will not disturb a state court's application of law to facts unless the state court's conclusions involved an 'unreasonable application' of clearly established

---

[1] Prior to the presentation of specific issues in his appellate brief, Jennings states that "all factual allegations, arguments, and authorities in Petitioner's Petition for Writ of Habeas Corpus and Response to Respondent Johnson's Answer and Motion for Summary Judgment are hereby incorporated by reference." A petitioner, however, may not adopt previously filed legal and factual arguments by reference. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993). Accordingly, only the issues presented and argued in Jennings's appellate brief are addressed. See id. at 225.

federal law as determined by the Supreme Court." <u>Davis</u>, 158 F.3d at 812 (quoting 28 U.S.C. § 2254(d)(1)); <u>see</u> <u>Lockhart</u>, 104 F.3d at 57. An application of federal law is unreasonable only "when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." <u>Drinkard</u>, 97 F.3d at 769; <u>see</u> <u>Davis</u>, 158 F.3d at 812; <u>Corwin</u>, 150 F.3d at 471-72. State factual findings are presumed to be correct unless rebutted by clear and convincing evidence. <u>See</u> <u>Davis</u>, 158 F.3d at 812; <u>Jackson v. Johnson</u>, 150 F.3d 520, 524 (5th Cir. 1998).

With this deference standard in mind, we consider whether Jennings has raised a substantial showing of the denial of a constitutional right.

A. Gardner Cross-Examination

In his first argument, Jennings maintains that the trial court violated his Sixth Amendment right to confrontation by limiting his cross-examination of Gardner, the state's chief witness. Specifically, Jennings argues that he was prohibited from cross-examining Gardner about his deferred adjudication for unlawful carrying of a weapon and his juvenile criminal history. These prior offenses, Jennings contends, exposed Gardner to a potentially higher punishment if he was convicted in a pending drug case and therefore gave Gardner an incentive to give testimony favorable to the prosecution.

On direct appeal, the Texas Court of Criminal Appeals rejected this claim. First, the state court found that Gardner's

7

potential bias was minimal because, under the Texas Penal Code, the prior offenses in question could not have been used to enhance his sentence if convicted of the pending drug charge. Second, the court found that Jennings had been given a fair opportunity to effectively cross examine Gardner and that the trial court had properly limited the scope of the cross-examination. The state habeas court determined that the issue was foreclosed as a result of having been raised on direct appeal.

Jennings does not raise a substantial showing of the denial of a constitutional right with respect to this issue. Whether the Confrontation Clause has been violated is a mixed question of law and fact. See Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997), cert. denied, 118 S. Ct. 1063 (1998). The state trial court's resolution of the Sixth Amendment claim given these facts was not an unreasonable application of clearly established federal law as determined by the Supreme Court. The trial court found, and Jennings does not contest, that the state elicited from Gardner that he had two pending cases against him involving a possession with intent to deliver heroin and cocaine and a misdemeanor assault, and that Gardner confirmed, on cross examination, the range of punishment for each of his pending cases. A defendant's Confrontation Clause rights are not violated so long as a jury "had sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivations

8

of the witness." United States v. Anderson, 139 F.3d 291, 302 (1st Cir.), cert. denied, 119 S. Ct. 158 (1998); see United States v. Jackson, 51 F.3d 646, 652-53 (7th Cir. 1995); United States v. Ramirez, 622 F.2d 898, 899 (5th Cir. 1980). The state court's finding that Jennings was allowed to cross-examine Gardner in compliance with the Sixth Amendment was not so unreasonable that reasonable jurists considering the question would be of one view that the state court ruling was incorrect, and we therefore decline to issue a COA on this issue.

B. Challenge for Cause of Venireperson Miesner

Jennings next argues that the trial court erred in excusing for cause prospective juror Miesner because of Miesner's apparent difficulty with the concept of convicting Jennings based on the testimony of one witness. Jennings admits that the trial record supports the conclusion that Miesner could not find the testimony of one witness sufficient to satisfy the State's burden of proof beyond a reasonable doubt, but argues that this inability did not render Miesner biased against the State.

Jennings raised this claim in the state habeas proceeding, although the state habeas court found that he had not objected on constitutional grounds to the excusal of Miesner during either in his trial or in his state habeas petition. The state habeas court also found that Miesner was properly excluded for cause because she could not follow the law. Specifically, the state habeas court found that Miesner

> steadfastly maintained that she was unable to convict
> based upon the testimony of a single witness even if

she believed the witness' testimony beyond a reasonable doubt.  Additionally, the veniremember was not able to consider the minimum range of punishment for the lesser-included offense of murder.  Furthermore, she could not convict based on circumstantial evidence alone or where a single witness and circumstantial evidence existed.

The trial court took special care to ensure that it granted the challenge for cause only after the veniremember had clearly demonstrated that she could not follow the law.

The federal district court, in denying Jennings habeas relief, did not rely on Jennings's failure to exhaust this claim in denying his petition, and we do not address that question.  Because under AEDPA, "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state," 28 U.S.C. § 2254(b)(2), we can review whether Jennings has raised a substantial showing of the denial of a constitutional right with respect to this issue.  See Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997), cert. denied, 118 S. Ct. 1845 (1998); Smith v. Klinger, No. 98-6012, 1998 WL 703144, at *2 (10th Cir. Oct. 9, 1998) (unpublished opinion).

Jennings has not made a substantial showing of the denial of a constitutional right on this issue.  Jennings has not attempted to rebut the state habeas court's factual findings regarding Miesner's unwillingness to follow the law, nor could he.  The record reflects that Miesner was unwilling, inter alia, to consider the minimum range of punishment on the lesser-included offense of murder.  A trial court does not violate a defendant's rights under the Sixth or Fourteenth Amendments by excluding

10

jurors who testify that they are unwilling to follow the law.
See Mann v. Scott, 41 F.3d 968, 981 (5th Cir. 1994) ("We think
Witherspoon and Adams make it unmistakably clear that it is
constitutionally permissible to exclude a venire member for cause
when it is clear that she cannot faithfully render a verdict
according to the evidence.").  We therefore decline to issue
Jennings a COA on this issue.

C.  Effective Assistance of Counsel on Direct Appeal

Jennings next argues that his court-appointed attorney on
direct appeal was deficient for failing to argue that the trial
court erred in excusing venireperson Miesner for cause.  To grant
Jennings a COA on this ineffective assistance of counsel claim,
Jennings must raise a substantial showing that his attorney's
performance was deficient, and that the deficiency prejudiced his
defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).
An attorney's performance is deficient only when the
representation falls below an objective standard of
reasonableness.  See id. at 687-88.  Our review of the
performance of Jennings's attorney must be "highly deferential,"
and we must make every attempt to "eliminate the distorting
effects of hindsight."  Id. at 689.  We must also maintain a
"strong presumption that . . . the challenged action might be
considered sound trial strategy."  Id. (internal quotation marks
omitted).

The state habeas court adjudicated this claim on the merits,
finding that Jennings's Sixth Amendment right to effective

11

assistance of counsel was not violated because, although Jennings's attorney could have raised the issue regarding the challenge for cause on direct appeal, he was not constitutionally required to raise the issue because it lacked merit.

Whether an attorney's performance violated the Strickland test is a mixed question of law and fact. See Davis, 158 F.3d at 812; Nobles, 127 F.3d at 418. We find that the state habeas court's resolution of this issue was not an unreasonable application of clearly established federal law as determined by the Supreme Court. As discussed above, Jennings has not rebutted the presumption we must afford to the state court's findings that venireperson Miesner was unwilling to follow the law and was therefore properly excused for cause by the trial court. The state court's conclusion that a defendant does not have a Sixth Amendment right to have his attorney raise meritless claims on direct appeal is not unreasonable, and we therefore decline to issue Jennings a COA on this issue. See McCoy v. Lynaugh, 874 F.2d 954, 965 (5th Cir. 1989) (finding no Sixth Amendment violation resulting from failure of appellate counsel to raise claim on direct appeal regarding exclusion of prospective juror where habeas petitioner did not rebut presumption that venireperson was properly excluded for cause).

D. Denial of Habeas Counsel's Motion to Intervene in Direct
Appeal

Jennings next argues that the Texas Court of Criminal Appeals violated his rights to the effective assistance of

12

counsel, to a fair trial, and to due process by refusing to allow his habeas counsel to intervene and file a supplemental brief on direct appeal to argue that venireperson Miesner was improperly discharged for cause. The Texas Court of Criminal Appeals, in adjudicating Jennings's state habeas petition, rejected this claim, finding no merit to his contention that he was denied any of his constitutional rights.

Jennings points to no established constitutional principle requiring an appellate court to accept supplemental claims filed during the pendency of an appeal. As the federal district court noted in denying Jennings habeas relief on this issue, there is no authority for such a claim, and it is barred by Teague v. Lane, 489 U.S. 288, 301 (1989), as an improper request for recognition of a new constitutional rule on habeas review. See Vega v. Johnson, 149 F.3d 354, 357 (5th Cir. 1998) ("In Teague, the Court held that federal courts may not create new constitutional rules of criminal procedure on habeas review."); Lucas v. Johnson, 132 F.3d 1069, 1080 (5th Cir.) (denying petitioner a certificate of probable cause (the pre-AEDPA COA equivalent), relying on Teague, because no "established constitutional principle" supported his contention), cert. dismissed, No. 97-9463, 1998 WL 313489 (U.S. July 17, 1998).

Jennings argues that the second Teague exception applies; the Texas Court of Criminal Appeal's failure to allow his habeas counsel to intervene, he maintains, resulted in a lack of "fundamental fairness that is implicit in the concept of ordered

13

liberty." <u>Teague</u>, 489 U.S. at 314 (internal quotation marks omitted). The second <u>Teague</u> exception, however, is only "designed to redress constitutional violations that 'so distort the judicial process as to leave one with the impression that there has been no judicial determination at all, or else skew the actual evidence crucial to the trier of fact's disposition of the case.'" <u>Davis v. Scott</u>, 51 F.3d 457, 467 (5th Cir. 1995) (quoting <u>Sawyer v. Butler</u>, 881 F.2d 1273, 1294 (5th Cir. 1989) (en banc), <u>aff'd sub nom.</u> <u>Sawyer v. Smith</u>, 497 U.S. 227 (1990)). Jennings offers only a conclusory statement in support of this argument--he fails to explain how the failure of the appellate court to allow Jennings's habeas counsel to intervene rendered his trial fundamentally unfair, and he cites no case law in support of his contention. No exceptions apply to the <u>Teague</u> bar, and we therefore decline to issue Jennings a COA.

E. Lack of Meaningful Appellate Review

Jennings's next argument also focuses on the failure of the Texas Court of Criminal Appeals to address the excusal for cause issue on direct appeal. Jennings argues that the failure of the Texas Court of Criminal Appeals to consider whether Miesner was properly excluded for cause on direct review, and its failure to consider the full scope of his Confrontation Clause argument, deprived him of meaningful appellate review, and that the Texas death penalty scheme, as applied to him, is therefore unconstitutional. The substance of this claim has been addressed and rejected above. No precedental authority required the Texas

14

Court of Criminal Appeals to address the juror exclusion issue on direct appeal, and that court's rejection of both the juror exclusion issue and the Confrontation Clause issue were not contrary to clearly established federal law as interpreted by the Supreme Court. Jennings has not made a substantial showing of the denial of a constitutional right on this issue, and we therefore decline to issue a COA.

F. Federal District Court Procedural Issues

Jennings's last two arguments focus on the federal district court proceedings in which the district court denied his habeas petition. First, Jennings contends that the district court erred in accepting the State's waiver of the exhaustion requirement with respect to his "meaningful appellate review" issue. Second, Jennings argues that the district court erred in not granting his request for an evidentiary hearing on his claims.

These claims lack merit. AEDPA specifically allows a district court to deny a federal habeas petition on the merits despite the petitioner's failure to exhaust state remedies. See 28 U.S.C. § 2254(b)(2); Nobles, 127 F.3d at 423. The exhaustion requirement is not jurisdictional in nature; it can be waived by the state. See Earhart v. Johnson, 132 F.3d 1062, 1065 (5th Cir.), cert. denied, 119 S. Ct. 344 (1998). In addition, as our resolution of Jennings's claims reveals no relevant factual disputes that would require development, the district court did not abuse its discretion in denying Jennings's motion for an evidentiary hearing. See Robison v. Johnson, 151 F.3d 256, 268

15

(5th Cir. 1998) (finding that district court did not abuse its discretion in denying evidentiary hearing in habeas proceeding, assuming arguendo that failure to develop record did not result from petitioner's own decision or omission, because of lack of factual disputes).

## III.  CONCLUSION

For the foregoing reasons, we DENY Jennings's request for a certificate of appealability.